**SO ORDERED.**

**SIGNED this 26th day of March, 2010.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES T. SZOSTEK, *dba* Jolly Jim's | ) | 09-31623 |
| Pets *dba* Jolly Jim's Pets Too | ) | |
| MARY ALICE SZOSTEK | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| JAMES T. SZOSTEK | ) | |
| MARY ALICE SZOSTEK | ) | |
| | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Adversary No. 09-03022 |
| | ) | |
| TEXAS STATE COMPTROLLER | ) | |
| OF PUBLIC ACCOUNTS | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM DECISION AND ORDER GRANTING TEXAS STATE
COMPTROLLER OF PUBLIC ACCOUNTS' MOTION TO DISMISS ADVERSARY
PROCEEDING PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

1

Came on for consideration the foregoing matter.  On July 28, 2009, James T. Szostek ("James") and his wife, Mary Alice Szostek ("Mary," and, together with James, the "Debtors"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On September 22, 2009, the Debtors filed a complaint (the "Complaint") against the Texas Comptroller of Public Accounts (the "Defendant" or the "Comptroller") seeking to determine (i) the Debtors' dischargeability of the Comptroller's claim, (ii) the extent of the Debtors' *in rem* liability to the Comptroller, and (iii) whether the chapter 11 plan complied with an insolvency plan under the Texas tax laws. As a basis for relief, the Complaint appears[1] to invoke §§ 523(a)(1) and 507(a)(8). *Complaint*, ¶¶ 11, 15 at 5-6. More specifically, Form 104, which is attached to the front of the Complaint, has the box checked that refers to §§ 523(a)(1), (14), and (14A). On October 23, 2009, the Comptroller filed a motion to dismiss (the "Motion to Dismiss") the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated herein through Federal Rule of Bankruptcy Procedure 7012 [Docket No. 5]. On November 5, 2009, the Debtors filed an objection (the "Objection") to the Motion to Dismiss [Docket No. 6].

## A. The Pleadings

Instead of jumping straight into the Comptroller's arguments in the Motion to Dismiss, the Debtors' background, as alleged in the Complaint, is necessary. The following are the relevant facts as stated in the Complaint. For the past several decades, the Debtors[2] have run a

---

[1] The court says "appears" because the Complaint makes legal arguments and, therefore, is not really a complaint at all.  Because of the odd manner in which the Complaint was writen it is difficult to discern exactly what relief the Debtors are seeking; the court will nonetheless endeavor to wade through the copious irrelevant legal arguments to get to the gravamen of the Debtors' action.

[2] The Complaint refers to Szostek.  It is unclear whether James or Mary alone ran the business or whether the Debtors ran the business together.  At the beginning of the Complaint, the Debtors state that they will refer to themselves as "Szosteks" when discussing community obligations, otherwise, the Debtors use the singular Szostek. The court will assume the singular refers to both Debtors.

pet store with two locations in the El Paso area: Jolly Jim's Pets and Jolly Jim's Pets Too.[3]
*Complaint*, ¶ 3 at 2. At some point in time, the Comptroller audited the Debtors' business for the
tax period beginning on August 1, 2001 through March 31, 2006 and found that the Debtors
owed $168,523.52 (the "Tax Liability"), plus penalties in the amount of $16,152 and interest in
the amount of $23,236 as of July 1, 2009. *Id.,*¶ 4 at 2. The taxes in question were sales taxes and
(we learn from the motion to dismiss) use taxes.

The procedural posture of the Tax Liability is also relevant. In addition to calculating the
Tax Liability against the Debtors, the Comptroller had denied the Debtors the right to submit a
proposed "insolvency plan," a state law remedy contemplated by the Texas Tax Code for
taxpayer debtors that are unable to pay their tax liabilities.[4] The Debtors timely appealed the
Comptroller's decision to the State Office of Administrative Hearings. *M. to Dismiss*, ¶ 2 at 2.
The appeal was heard by an Administrative Law Judge (the "ALJ"), who issued an Amended
Proposal for Decision (the "PFD"). *Id.*  The ALJ upheld the Tax Liability but also held that the
Debtors should be allowed to submit an insolvency plan under the Texas Tax Code. *Id.*, ¶ 4 at 3.
Under the Texas Administrative Code, the Comptroller was to issue a decision after receiving the
PFD. *Id.*, ¶ 7 at 4-5 (citing 34 Tex. Admin. Code § 1.28). A Comptroller's decision becomes
final 20 days after being issued unless a motion for a rehearing is filed by the debtor. *Id.*, ¶ 7 at 5.
Additionally, under Texas law, there is a 30-day time limit for initiating judicial review of the
Comptroller's decision. *Id.* (citing Tex. Gov't Code § 2001.176). Here, the ALJ's PFD did not
result in a final, non-appealeable decision from the Comptroller because the Debtors filed for
chapter 11 before the Comptroller could issue its final decision. *Id.* As a result, the whole matter
was stayed pursuant to 11 U.S.C. § 362. Because the Tax Liability is not a final, non-appealeable

---

[3] The bankruptcy petition states that James did business as Jim's Jolly Pets and Jim's Jolly Pets Too.  It is unclear
whether Mary also did business as these two entities since she is listed on the bankruptcy petition as a "joint debtor."
[4] Under the Texas Tax Code, § 111.102, the comptroller may settle a claim for tax, penalty or interest under certain
circumstances.

3

order from the Comptroller, this court has jurisdiction to hear and determine the Comptroller's claim under § 505(a)(2). *Id.* (citing *Texas Comptroller of Public Accts. v. Trans State Outdoor Advertising Co., Inc. (In re Trans State Outdoor Advertising Co., Inc.)*, 140 B.R. 618 (5th Cir. 1998)). The Complaint, however, does not ask for that relief.

According to the Debtors, as described in both the Complaint and the exhibits attached to the Complaint,[5] the Comptroller found that the Debtors (i) improperly refunded certain sales taxes in the amount of $91,694 ("Category 1 Taxes"), (ii) under-reported taxable sales (based on sales the Debtors reported to the Comptroller compared to sales the Debtors reported on their federal income tax returns) in the amount of $50,719 ("Category 2 Taxes"); and (iii) did not pay use taxes in the amount of $26,109 ("Category 3 Taxes").[6] *Complaint*, ¶¶ 4-5 at 2-3; PFD, at 3-4. The Debtors characterize the Tax Liability as taxes that were <u>uncollected taxes,</u> as opposed to taxes that were collected and not paid to the state. *See generally, Complaint.* The Debtors go on to cite various provisions of the Texas Tax Code for the proposition that their "penalty for failure to collect is not a personal penalty, but a penalty *in rem*, closure of the business." *Id.*, ¶ 17 at 6. The Debtors argue that although the Texas Tax Code does assign "liable capacities, when it comes to taxes *actually collected* and not remitted to the State… the Texas Tax Code does not specify a liable capacity for failure to *collect*." *Id.* Therefore, according to the Debtors' legal theory, § 507(a)(8)(C) does not apply to except the Tax Liability from discharge because § 507(a)(8)(C) only applies to the extent the claim is "for a tax required to be collected or withheld and for which the debtor is liable in whatever capacity." *Id.*, ¶ 15 at 6. Here, say the Debtors, the Texas Tax Code does not assign the Debtors any liable capacity since they merely failed to collect the required taxes. As best as the court could discern, the gravamen of the Debtors

---

[5] The Complaint attached as an exhibit the ALJ's PFD. As explained in more detail below, the court is within its rights to look at the PFD for purposes of a 12(b)(6) motion to dismiss.

[6] The Comptroller admits that the use taxes are not a priority debt under § 507(a)(8)(C). Thus, this category is off the table for purposes of the relief sought in the Complaint. In other words, the Category 3 Taxes are dischargeable.

4

Complaint is, in short, that because they owe the Tax Liability for *failing to collect* taxes, as opposed to collecting taxes and failing to remit them to the Comptroller, § 507(a)(8)(C) does not apply to except the Tax Liability from being discharged. The Debtors then go on to argue their legal theory in the Complaint, in effect converting the Complaint into a legal brief.[7]

In addition to asking the court to find that the Tax Liability is dischargeable, the Debtors seek two other alternative forms of relief in their Complaint. First, the Debtors ask this court to force the Comptroller to accept a Chapter 11 plan as an "insolvency plan" under Tex. Tax Code § 111.102." *Complaint*, ¶ 11 at 5. Second, they ask for a determination that "if liability is *in rem*, and not *in personam*, the Comptroller is entitled to a share of the net value of the business' assets, if the business were to be transferred." *Id.* By this device, the Debtors apparently intend to confine the Comptroller's recovery to the net value (if any) of the business enterprise alone (it is not clear whether the businesses in question were separate legal entities). In other words, the Debtors seek a declaratory judgment that the Comptroller's claim be deemed to have been satisfied by its share, of the proceeds recovered from a sale of the Debtors' business.[8] The Debtors believe that they should be able "either to start a new business by incorporating, or to sell his business to a third party who can get his own sales tax permit." *Complaint*, ¶ 26 at 11. The Debtors go on to argue that if there is

> no personal liability for uncollected sales tax – only an *in rem* liablity in the form of prohibiting the operation of the business, under Texas Tax Code § 111.010-.011 until the tax is paid – then Szostek [the Debtors] should be able to reorganize by forming a new entity to carry out a Chapter 11 plan. The plan, of course, would have to pay to the creditors of the old business, the value of the assets, so as to clear away problems of both (a) transfer in fraud of existing creditors, and (b) successor liability for debts of the old business.

*Id.*, ¶ 28 at 12.

---

[7] Legal briefing is not technically appropriate in a Complaint. *See* FED.R.BANKR.P. 7008. A defendant is hard pressed to admit or deny a plaintiff's legal theories in its answer.
[8] To the extent the Debtors are asking the court for guidance in how to treat the Comptroller in a chapter 11 plan, the court declines to provide such legal advice.

<u>The Comptroller's Motion to Dismiss</u>

In the Motion to Dismiss, the Comptroller requests that the court dismiss the Debtors' Complaint pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(6) for failure to state a claim upon which relief may be granted. The Comptroller first notes that, based upon the procedural posture of the Tax Liability, this court would have the jurisdiction to re-determine the amount of the Tax Liability under § 505(a)(2). However, that type of relief was not sought by the Debtors in the Complaint; instead, through the Complaint, the Debtors are impermissibly trying to re-characterize the Tax Liability as taxes that they simply failed to collect. *M. to Dismiss*, ¶ 8 at 5. The Comptroller points out that even the Debtors admit in their Complaint that the Debtors in fact *did* collect sales taxes, and incurred liability by improperly refunding the taxes back to their customers. But regardless of the Debtors' characterization of the Tax Liability, says the Comptroller, "the Complaint does not challenge the basis for the ALJ's PFD. Instead, Mr. Szostek makes an erroneous argument that under state law and the Bankruptcy Code the seller is only liable for sales taxes actually collected." *Id.*, ¶ 7 at 5. That assertion, says the Comptroller, is wrong as a matter of law because liability also attaches for taxes uncollected.

The Comptroller argues that, under § 507(a)(8)(C) and § 523(a)(1) of the Bankruptcy Code, the Tax Liability is non-dischargeable, whether the taxes were collected and improperly refunded (as the Comptroller maintains) or not actually collected (as the Debtors maintain). The Comptroller distinguishes *Matter of Fox*, 609 F.2d 178 (5th Cir. 1980), a case on which the Debtors rely, on the basis that the Fox case was interpreting § 17a(1)(e) of the Bankruptcy Act, the language of which was changed in the Bankruptcy Code. *Id.*, ¶¶ 10-11 at 6-7. The Comptroller cites to *Malcuit v. State of Texas*, 134 B.R. 185 (N.D. Tex. 1991), *In re Avant*, 110 B.R. 264 (Bankr. W.D. Tex. 1989) and *In re Gulf Consol. Services, Inc.*, 110 B.R. 267 (Bankr.

6

S.D. Tex. 1989) to support its contention that the Tax Liability is non-dischargeable. *Id.*, ¶ 12 at 7-8.

The Comptroller asserts that the Debtors' arguments that under state tax law they are not personally liable for the underlying Tax Liability are also faulty. First, the Debtors' assertion that the Comptroller can only assess and collect taxes against purchasers, as opposed to sellers, is incorrect and "… has been consistently rejected by courts…" *Id.*, ¶ 13 at 8 (citations omitted). Second, the Comptroller states that he is not limited to an *in rem* remedy against the Debtors under Tex. Tax Code § 111.011(a). *Id.*, ¶ 15 at 9-10. That section merely allows the attorney general to enjoin a person from operating a business if that person fails to comply with the Texas Tax Code. The Comptroller's remedies are cumulative under Texas Tax Code § 111.015 and include "collection suits in state court (§ 111.010), filing tax liens (§ 113.002), levying on assets (§ 111.021), and other remedies. They are not limited to simply enjoining business operations under § 111.011(a)." *Id.*, ¶ 15 at 10. Furthermore, Tex. Tax Code § 111.016(a) expressly provides that the Debtors are subject to *personal* liability on the Tax Liability because the Debtors collected and improperly refunded taxes. *Id.*, ¶ 16 at 10.

The Comptroller also contends that the Bankruptcy Code, not Texas' Tax Code controls the terms under which the Debtors must pay the Tax Liability, undercutting the Debtors' efforts in the Complaint to obtain a legal determination that a Chapter 11 plan constitutes an insolvency plan under the Texas Tax Code. The Complaint alleges that, pursuant to the ALJ's PFD, the Debtors are entitled to a Settlement on Redetermination (an insolvency plan) under § 111.102 of the Tax Code, which can and should be judicially imposed on the Comptroller. *Complaint*, ¶ 10. But the Comptroller asserts that an insolvency plan may <u>not</u> be judicially imposed upon it and, in any event, the Debtors, who filed a voluntary petition for bankruptcy relief, are bound to comply with §§ 1129(a)(9)(C) and 511 of the Bankruptcy Code. *M. to Dismiss*, ¶¶ 17-18 at 11. The

7

Comptroller repeats that the ALJ's recommendation that the Comptroller enter into an insolvency plan with the Debtors is not binding on this court. *Id.*, ¶ 18 at 11. Moreover, it is legally incorrect (says the Comptroller) to say that ALJ proposals or contractual agreements between the Comptroller and debtors would override the provisions of the Bankruptcy Code. *Id.* For this reason, says the Comptroller, the court should dismiss the Complaint to the extent it asks the court to rule that the Debtors are entitled to file and confirm a chapter 11 plan that is based on a state law 'insolvency plan' that does not also comply with the Bankruptcy Code.

Lastly, the Comptroller notes that – although not asserted by the Debtors in their Complaint – the use taxes assessed against the Debtors in the amount of $26,109 are not subject to § 507(a)(8)(E). Therefore, the Comptroller will amend its proof of claim to remove the claim for the Category 3 Taxes (failure to pay use taxes).

<u>Debtors' Objection To The Motion To Dismiss</u>

The Debtors filed a bare bones objection reiterating the arguments they made in the Complaint. The Debtors maintain that *Matter of Fox*, 609 F.2d 178 (5th Cir. 1980) is still good law in Texas notwithstanding the change of the language in the Bankruptcy Code. Second, the Debtors re-argue their position that uncollected taxes are different from taxes that were collected and not paid to the state. "The merchant who merely fails to collect the tax, faces no statutory consequence except an injunction against operating the same business, and he ought to be able to walk away from his business and carry on in another endeavor, without the millstone of a nondischargeable personal debt about his neck." *Obj.*, ¶ 1(c) at 2.[10] Third, the Debtors argue that because there are two clauses in § 507(a)(8)(C)[11] – 'required to be collected' and 'and for which the debtor is liable in whatever capacity' – that are separated by the word 'and,' that both

---

[10] There are two subsection (c)s in paragraph 1. This quote is found in the first subsection (c).
[11] The Debtors cited to § 523(a)(8)(C) but this is obviously a typo.

elements must be met. In Texas, the Debtors say they are not "liable in any capacity" under the Texas Tax Code. *Id.*, ¶ 1(c) at 2.[12] The Debtors argue that it makes no sense for the Bankruptcy Code to require the Debtors to pay more through a chapter 11 plan than what they would have paid if they had not filed for bankruptcy and paid pursuant to the ALJ's recommendation. *Id.*, ¶ 3 at 3. Fourth, the Debtors appeal to common sense. *Id.*, ¶ 5 at 3. The Debtors appear to argue that the Comptroller's position – that the Debtors are liable under § 111.016(a) for collecting sales taxes and returning them to the customers – "elevates form over substance and is iron-fisted." *Id.* Inexplicably, the Debtors lastly go on to argue that it "is far too early in these proceedings, to reach the question of an insolvency plan."[13] *Id.*, ¶ 6 at 4. In this same paragraph, the Debtors admit that the ALJ's decision in this case is not final and that the court has the jurisdiction to make 11 U.S.C. § 505(a) determinations. *Id.*

**B. Legal Standards**

Rule 12(b)(6) Motion To Dismiss

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must assess the legal feasibility of the complaint, not weigh the evidence that might be offered in its support. *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999). The Court's consideration "is limited to facts stated on the face of the complaint and in the documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken." *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993).[14]

---

[12] This argument is contained in the second subsection (c) of paragraph 1.

[13] I say 'inexplicably' because the Debtors specifically <u>asked</u> the court for a declaratory judgment that a chapter 11 plan can be an insolvency plan as defined in the Texas Tax Code. Obviously, at this point, the court cannot rule on whether a chapter 11 plan that has yet to be filed meets the requirements of the Bankruptcy Code. (For the record, the court additionally notes that confirmation of a chapter 11 plan would not take place in an adversary proceeding.)

[14] A Rule 12(b)(6) motion may not be defeated, therefore, by an objection's assertion of facts that do not appear in the complaint, although such assertions may be relevant to a motion for leave to amend the complaint.

The court accepts the complaint's factual allegations as true, even if doubtful in fact, and must draw all reasonable inferences in favor of the plaintiff, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007); *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001), *cert. denied*, 535 U.S. 1054 (2002); however, if a plaintiff's allegations are clearly contradicted by documents incorporated into the pleadings by reference, the court need not accept them. *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp.2d 523, 528 (S.D.N.Y. 2007).

Moreover, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, the complaint must state more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). Thus, while the Supreme Court has confirmed, in light of the notice-pleading standard of Fed. R. Civ. P. 8(a), that a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007); *Bell Atlantic v. Twombly*, 127 S.Ct. at 1964, to survive a motion under Rule 12(b)(6), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1964. Where the claim would not otherwise be plausible on its face, therefore, the complaint must contain sufficient additional factual allegations to "nudge [the] claim across the line from conceivable to plausible;" *id.* at 1974; otherwise, the defendant should not be subjected to the burdens of continued discovery and the worry of overhanging litigation. *Id.* at 1965-67. *See also Benzman v. Whitman*, 523 F.3d 119, 129 (2d Cir. 2008); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *cert. granted*, 2008 U.S. LEXIS 4906 (June 16, 2008) (to survive a Rule 12(b)(6) motion after *Bell Atlantic*, a complaint must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible").

Rule 8(a)(2) does not, however, require a claimant to set forth any legal theory justifying the relief sought on the facts alleged, but only requires sufficient factual averments to show that the claimant may be entitled to some relief. *See Newman v. Silver*, 713 F.2d 14, 15 n.1 (2d Cir. 1983). Even if a claim for relief does state a legal theory, it still may be sustained if the facts as alleged support a claim. 2 *Moore's Federal Practice* ¶ 8.04[3], 8-33-34 (3d ed. 2008) (citing Fed. R. Civ. P. 54(c) (except for judgment rendered by default, final judgment shall grant relief to which a party is entitled, regardless of relief demanded in pleading); *Tolle v. Carrol Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992) ("a complaint need not point to the appropriate statute or law in order to raise a claim for relief under Rule 8…[A] complaint sufficiently raises a claim even if it…points to the wrong legal theory as a basis for that claim, as long as 'relief is possible under any set of facts that could be established consistent with the allegations.")).

<u>11 U.S.C. §§ 523(a)(1) and 527(a)(8)(C)</u>

First, as always, the statutory language. Section 523 provides

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – (1) for a tax or a customs duty – (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed; …

11 U.S.C. § 523(a)(1)(A). In turn, the relevant sections of § 507 state that "[t]he following expenses and claims have priority in the following order: … (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for – … (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity; …" 11 U.S.C. § 507(a)(8)(C). Thus, a tax liability, to be non-dischargeable under section 523(a)(1) must first qualify for priority under § 507(a)(8).

The Complaint alleges that a portion of the Tax Liability is for taxes not collected, and that this liability thus does not qualify for an exception to discharge under section 523(a)(1). That

factual assertion is belied, however, by the ALJ's Proposal for Decision ("PFD"), which was attached to the Complaint. The PFD describes, as a factual finding, the Tax Liability as taxes that were *collected* and improperly refunded and taxes that were collected but not remitted to the state because the Debtors under-reported their sales. As previously noted, for purposes of a motion to dismiss, if the facts alleged in the complaint are clearly contradicted by documentation attached to the complaint then the court is not obliged to accept those facts as alleged. *See Labajo v. Best Buy Stores, L.P.*, 478 F.Supp.2d at 528.

With respect to the Category 1 Taxes – improperly refunded sales taxes – there is no doubt in this court's mind that the Debtors actually collected these sales taxes. Instead of remitting the collected taxes to the state, the Debtors remitted the collected taxes back to their customers.

It is virtually uncontested that the Category 2 Taxes are also taxes that were collected by the Debtors. According to the Complaint and the PFD, this category of the Tax Liability was imposed for sales that the Debtors made but did not report to the Comptroller. In other words, the Debtors sold goods and collected sales taxes but failed to remit them to the Comptroller. The Complaint does not allege that these taxes were not collected by the Debtors. In arguing that the Tax Liability is for uncollected taxes, the Debtors confine themselves to the Category 1 Taxes. *Complaint*, ¶ 5 at 2-3.

The Category 3 Taxes are no longer at issue because the Comptroller agreed that these taxes are not priority taxes under § 507(a) of the Bankruptcy Code because they are not trust fund taxes.

Thus, despite the Debtors' characterization that the Tax Liability is for uncollected taxes, the facts as alleged in the Complaint and as stated in the PFD confirm that the Debtors *did* in fact

12

09-03022-hcm  Doc#8  Filed 03/29/10  Entered 03/29/10 09:44:55  Main Document  Pg 13 of 25

collect the Tax Liability. The Debtors have already acknowledged that, if the taxes were collected but not remitted, they would qualify under § 507(a)(8). Consequently, the Tax Liability for both Category 1 and Category 2 Taxes are non-dischargeable under §§ 523(a)(1). The Motion to Dismiss the Complaint will be granted on this ground.

In the interest of completeness, assuming that the Category 1 Taxes (the only taxes which the Complaint asserts were uncollected, *see Complaint*, ¶ 5 at 2-3) is a liability imposed by the Comptroller for <u>uncollected</u> taxes, the court concludes that the asserted liability for Category 1 Taxes is nonetheless dischargeable pursuant to §§ 523(a)(1) because the liability still qualifies for priority under § 507(a)(8)(C).[16]

The Debtors are correct that *Matter of Fox*, 609 F.2d 178 (5th Cir. 1980) did indeed hold that uncollected sales taxes were dischargeable in bankruptcy under § 17a(1)(e) of the Bankruptcy Act, 11 U.S.C. § 35(a)(1).[17] Section 17a(1) of the Act provided

> A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy: Provided, however, That a discharge in bankruptcy shall not release a bankrupt from any taxes . . (d) with respect to which the bankrupt made a false or fraudulent return, or willfully attempted in any manner to evade or defeat, or (e) <u>which the bankrupt has collected or withheld</u> from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over . . .

---

[16] Certain cases discuss § 507(a)(7)(C), not (8)(C). "When the Code was originally enacted, the priority for taxes was contained in section 507(a)(6). The Bankruptcy Amendments and Federal Judgeship Act of 1984 created a new fifth priority for grain producers and United States fisherman and the tax priority was renumbered as section 507(a)(7). The Bankruptcy Reform Act of 1994 created a new seventh priority for alimony, maintenance and support and the tax priority was again renumbered, this time as section 507(a)(8). Under the 2005 Act, the tax priority was one of only two that was not renumbered." 4-507 *Collier on Bankruptcy* ¶ 507.11. Thus, those cases talking about former subsection (7)(C) are discussing what is now subsection (8)(C).

[17] The Debtors are also correct to distinguish *Malcuit v. State of Texas*, 134 B.R. 185 (N.D. Tex. 1991), *In re Avant*, 110 B.R. 264 (Bankr. W.D. Tex. 1989) and *In re Gulf Consol. Services, Inc.*, 110 B.R. 267 (Bankr. S.D. Tex. 1989) on the facts. In those three cases, it is either not clear whether the taxes at issue were actually collected by the sellers or were in fact collected. At least for purposes of our discussion here, the Tax Liability at issue here is treated as having been uncollected in its entirety.

13

*Matter of Fox*, 609 F.2d at 180 (quoting § 17a(1) (emphasis added)). The Bankruptcy Code enacted a similar provision in § 507(a)(8)(C), but with slightly different language, excluding from discharge those taxes that are "*required to be collected* or withheld and for which the debtor is liable in whatever capacity…" *See* 11 U.S.C. § 507(a)(8)(C). The significance of the change is obvious. The Act spoke of taxes which the debtor "has collected or withheld from others" while the Code speaks of taxes "*required* to be collected or withheld." The latter formulation does not by its plain terms require that the tax in question be one that has in fact been collected. Thus, uncollected taxes can form the basis for a nondischargeable claim under the Code, provided the debtor is also liable in some capacity. Other courts concur in this straightforward reading of the statutory language. *See McDonough v. Iowa Dept. of Revenue*, 346 B.R. 492 (Bankr. S.D. Iowa 2006); *In re Taylor Tobacco Enterprises*, 106 B.R. 441 (E.D.N.C. 1989); *Rikard v. State of Alabama Dept. of Revenue*, 127 B.R. 59 (N.D. Ala. 1989).

The Debtors acknowledge that the *McDonough* and the *Rikard* cases are contrary to the Debtors' position here, but distinguish them in two ways: first, the Debtors claim that the change in the statutory language is not significant. Alternatively, they say that the language in § 507(a)(8)(C) is ambiguous. *Complaint*, ¶ 22 at 10. The Debtors' contentions will not hold.

It has always been true that "[c]ontemporary Supreme Court jurisprudence establishes that the purpose of statutory interpretation is to determine congressional intent." *In re American Home Mortgage Holdings, Inc.*, 411 B.R. 181, 187 (Bankr. D. Del. 2009). The Supreme Court has held "'when a statute's language is plain, the sole function of the courts, at least where the disposition by the text is not absurd, is to enforce it according to its terms… the United States Congress says in a statute what it means and means in a statute what is says there.'" *Id.* at 187-188 (citations omitted). A statute's legislative history is not a default go-to in interpreting a statute. Only if the statute is ambiguous may a court look beyond the text to other sources to

14

divine the intent of Congress. "If the statute is ambiguous, the Court must use other canons of statutory construction, including legislative history where available, to determine the purpose of the statute." *Id.* at 188.

Here, the court finds that the language of § 507(a)(8)(C) is not ambiguous. Granted, there has been some dispute in the case law as to whether, after the language changed in § 507(a)(7)(C) of the Bankruptcy Code, sales taxes were to be 'trust fund' taxes or excise taxes. *See e.g. In re Taylor Tobacco Enterprises*, 106 B.R. at 443-445 (discussing the rationale behind "finding sales taxes to fall within the unlimited trust fund priority of Section E [of § 507(a)(7)]…"). To resolve that dispute, courts have looked to the legislative history behind § 507 to find that, broadly speaking, sales taxes are, in fact, trust fund taxes. *Id.*[18] However, the Debtors have not cited one case that found the language of § 507(a)(8)(C) to be ambiguous as it applies to collected vs. uncollected sales taxes; nor has this court discovered any such case. Indeed, it would be contrary to the clear language of the statute to hold that § 507(a)(8)(C) still requires a tax to be actually collected, as was the case under § 17a(1) of the Bankruptcy Act. The current statute now says "required to be collected," which is a clear change from the past-tense "…which the bankrupt has collected or withheld…" used in § 17a(1) of the Act. There is no reason in this court's view to ignore this clear change in language from Act to Code, and every reason to attend to it.

Even if the court were to find the language of section 507(a)(8)(C) to be ambiguous however, the Debtors' arguments would still fail. Despite what the Debtors contend with respect to the purported legislative history of § 507(a)(8)(C), the court in *Taylor Tobacco* noted that

---

[18] The *Taylor Tobacco* court discussed the legislative history of § 507 in the context of the issue of whether a sales tax was a trust fund or excise tax. 106 B.R. at 443-445. The court followed three circuit courts – *Rosenow v. State of Illinois Department of Revenue*, 715 F.2d 277 (7th Cir. 1983), *DeChiaro v. New York Tax Commission*, 760 F.2d 432 (2nd Cir. 1985), and *In re Shank*, 792 F.2d 829 (9th Cir. 1986) – in finding that sales taxes were trust fund taxes. All three circuit courts had noted that Congress had selected the Senate's broader version of § 507(a)(7)(C), and therefore held that sales taxes could not be excluded from that subsection. *Id.* at 444.

"[t]he court is unaware of any legislative history providing guidance on the matter... the legislative history is silent as to an explanation for the change in language." *Id.* at 445. The court went on to say that, in any event,

> the lack of an explanation for a change in language does not denigrate the fact that a change in the language has occurred. The requirement of actual collection was the provision on which the *Fox* court held that priority status for uncollected sales taxes was to be denied. 609 F.2d at 185. Moreover, the observation of the *DeChiaro* [*DeChiaro v. New York Tax Commission*, 760 F.2d 432 (2nd Cir. 1985)] court that the broader language of the Senate version was the provision selected to become Section C [of § 507(a)(7)(C)] supports the conclusion that the uncollected sales taxes are no longer dischargeable under Section E if they are required to be collected under Section C.

*Id.*

Moreover, from a public policy perspective, it makes no sense to allow a debtor to discharge a trust fund tax that it has failed to collect.

> Just as an incentive to default on taxes collected by a retailer is created by allowing discharge of state claims, an incentive not to collect taxes is created by the same limitation of liability. Under the North Carolina taxation chapter, the failure to collect sales tax does not relieve the retailer of liability for the uncollected taxes. To allow a retailer to mitigate the consequences of failing to collect sales tax by using a bankruptcy proceeding to avoid paying uncollected sales taxes older than three years would be to create an incentive as perverse as the incentive considered in [*In re Shank*, 792 F.2d 829, 832 (9th Cir. 1986)]. The purpose of the Bankruptcy Code is 'to allow a fresh start to the bankrupt.' That purpose does not include using the Code as a shield for dishonest or devious behavior.

*Id.* at 445.[19]

The court agrees with the rationale of *Taylor Tobacco*. Thus, even if the language of § 507(a)(8)(C) was ambiguous, the court would still conclude that uncollected sales taxes are not

---

[19] The North Carolina Tax Code at issue in *Taylor Tobacco*, 106 B.R. at 444-445 (citing North Carolina tax law), was similar to the requirements of the Texas Tax Code (discussed in more detail below). Both codes provide that a seller "shall" charge a tax and include such tax in the purchase price of the good that is being sold. *See id.* and Tex. Tax Code § 151.052. The purchaser owes the seller the tax and the seller is able to collect it in the same way it is able to collect the underlying price of what was exchanged. The Debtors try to distinguish *Taylor Tobacco* on the basis that, apparently, in North Carolina it was misdemeanor for a retailer to offer to absorb the sales tax for the customer, as opposed to charging the customer for the tax. *Id.* at 445-446. However, this fact is irrelevant. What is relevant is that, similar to the requirements in North Carolina, the Texas Tax Code requires sellers to collect a sales tax. § 151.052. And both the seller or the buyer are liable to the state for such tax. § 111.016(a).

dischargeable under §§ 523(a)(1), so long as it is demonstrated that the Debtors are "liable in any capacity" under Texas law.

The Debtors argue that they are not, in fact, liable in "any capacity" under the Texas Tax Code. The Debtors assert that

> [t]here is nothing in the statute… to indicate the specific 'capacity' in which an individual debtor is liable. Conceivably, 'capacity' could include, depending upon the working of the particular tax statute, partners in a general partnership; general partners in a limited partnership; or the person who signed a return… the Texas Tax Code *does* assign liable capacities, when it comes to taxes *actually collected* and not remitted to the State. Tex. Tax Code § 111.016(a). But the Texas Tax Code does not specify a liable capacity for failure to *collect*. Texas Tax Code 111.016(d) does not alter the foregoing analysis of personal liability for failure to collect. Though it is true that subsection (d) gives a laundry-list of capacities for 'responsible individuals' in corporations, associations, LLCs, and partnerships, the definition is confined to Tax Code § 111.016(a), and to tax that was actually received or collected.

*Complaint*, ¶¶ 17-18 at 6-7. Notably however, James was <u>doing business as</u> the pet stores. In other words, James and the pet stores were not separate legal entities and the Comptroller did not need to pierce the corporate veil to make James personally liable for the Tax Liability. For this reason alone, the Debtors arguments that they are not within one of the 'capacities' as outlined in § 111.016(d)(1) is simply misplaced.[20]

It remains to determine whether the Debtors can be liable under Texas law for "uncollected" sales taxes. Relevant Texas law provides that:

> (a) Except as provided by Subsection (d), a seller[[21]] who makes a sale subject to the sales tax imposed by this chapter <u>shall</u> add the amount of the tax to the sales price, and when the amount of the tax is added:

---

[20] There is a line of cases holding that "[t]he individual liability of a corporate officer or director under *Section 111.016* is limited to the amount actually collected by the officer. The state is required to prove actual receipt or collection of the tax." *In re Cooley*, 166 B.R. 85 (Bankr. S.D. Tex. 1993) (citing *N.S. Sportswear, Inc. v. State*, 819 S.W.2d 230 (Tex. App. – Austin 1991, no writ); *Dixon v. State*, 808 S.W.2d 721 (Tex. App. – Austin 1991, writ dism'd)); *Herrera v. State*, 2002 Tex. App. LEXIS 951 (Tex. App. – Austin, Feb. 7, 2002). However these cases are distinguishable because, in the first place, the Debtors are not seeking a redetermination of the Tax Liability pursuant to § 505 in their Complaint, and second, as noted above, James did business as the pet stores.
[21] The Texas Tax Code contains numerous definitions that will not be repeated here since both parties agree that the Debtors' business constitutes a 'seller' for purposes of §§ 151.052 and 111.016. Additionally, the parties agree that the goods sold by the Debtors fall within the provisions imposing sales taxes in the Texas Tax Code.

17

      (1) it becomes a part of the sales price;

      (2) it is a debt of the purchaser to the seller until paid; and

      (3) if unpaid, it is recoverable at law in the same manner as the original sales price…

§ 151.052 (emphasis added).  Additionally, the Texas Tax Code provides that the sale of certain items, including items that are sold to buyers that will be exporting the tangible personal property "beyond the borders of the United States…," § 151.307(b), is exempt from sales tax. § 151.307. As described above, the Complaint argues that when the Debtors collected and refunded (to Mexican customers who exporting the items to Mexico) exempt sales taxes, the tax collected was really not collected at all. *Complaint*, ¶¶ 4-5, at 2-3. The Complaint goes on to cite to § 111.016(a)[22] of the Tax Code and argue that under that provision, the Debtors cannot be liable because the Debtors did not in fact collect the refunded Category 1 Taxes. What the Debtors failed to cite to the court however is § 151.307(e), which expressly and unequivocally saddles them with liability for the 'uncollected' Category 1 Taxes. Section 151.307(e) says: "a retailer who makes a refund before the time prescribed by Subsection (d) or makes a refund that is undocumented or improperly documented is liable for the amount of the tax refunded with interest." (emphasis added). Therefore, clearly, the Debtors are liable in some 'capacity' to the state of Texas for the Category 1 Taxes. Indeed, the Debtors are liable in their capacity as retailers of personal property.

Moreover, Texas courts have long held that "both vendors and purchasers are liable to the state for these taxes." *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835, 838 (Tex. App. Austin –1990) (finding that a purchaser was liable for sales taxes that had not been collected by the vendor); *Bullock v. Delta Industrial Construction Co.*, 668 S.W.2d 502 (Tex. App. – Austin 1984). Indeed, the Texas Tax Code provides that "[t]his chapter does not prohibit the comptroller

---

[22] Anyone who "receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected." § 111.016(a).

from proceeding against a consumer for an amount of tax that the consumer should have paid but failed to pay." § 151.515. The court in *Foley Bros.* noted that

> In 1967, an attorney general opinion said that the sales tax could be collected from either the purchaser or the seller. Op. Tex. Att'y Gen. No. M-165 (1967). The Comptroller's rules have provided since 1975 that the tax may be collected from the seller or purchaser or both until the tax has been paid:
>
> Both sellers and purchasers are subject to audit and assessment of tax on any transactions on which tax was due but has not been paid. The Comptroller may proceed against either the seller or the purchaser, or against both, until the tax, penalty and interest has been paid.
>
> Comptroller Rule 3.282, 34 T.A.C. 3.282 (effective 12/15/75).
>
> This administrative interpretation has been in effect through amendments of the statute. The legislature is deemed to have accepted an administrative interpretation or policy that endured through amendments of the statute in question.

*Id.* (certain citations omitted). In *Foley Bros.*, the court specifically noted that simply because a seller fails to collect a sales tax – despite the fact that, under § 151.052, a seller "shall" collect sales taxes from purchasers – does not mean that the tax is neither due nor collectable from <u>either</u> the seller or the purchaser.[23] *Id.* at 838-839; *see also Calvert v. Canteen Co.*, 371 S.W.2d 556 (Tex. 1963) (charging a vending machine retailer for taxes that the retailer did not, and indeed could not, collect from its customers).

The court in *Davis v. State of Texas* stated the proposition directly. Although sellers have a legal duty to collect sales taxes from purchasers on behalf of the state of Texas, "both sellers and purchasers are liable to the state for sales taxes." *See Davis v. The State of Texas, et. al.*, 904 S.W.2d 946, 952 (Tex. App. Austin, 1995). Therefore, both sellers and purchasers can be described as taxpayers. *Id.*

---

[23] Although it is true that *Foley Bros.* can be distinguished from this case on the fact that, in *Foley Bros.*, the comptroller was trying to collect unpaid sales taxes from the purchaser instead of the seller. However, the court's legal conclusion that the tax could be collected from either party is relevant here.

> [T]he seller must also be characterized as a tax collector, and because of this, seller and purchaser liability to the state as taxpayers arises for differing reasons: the purchaser, as a statutory debtor to the seller but ultimately liable to the state, owes sales tax on its purchase transaction; the seller also owes the state the sales taxes a customer incurs because the seller must, under the state's authority, collect those taxes. Under the Act, then, the economic burden of the tax is on the purchaser: the sales tax will either be collected by the seller from the purchaser under the state's authority and then remitted to the state; or, if the seller fails to bill the purchaser, the tax will be collected directly by the state from either the seller or purchaser.

*Id.* at 952-953. In fact, "if the state collects the tax from the seller, the seller has a cause of action against the purchaser to recover the tax it should have originally collected from the purchaser." *Id.* at 953 n.7 (*citing Tex. Tax Code* §§ 151.052(a)(3); *Reaves & Becker Co. v. Wilkes Co.*, 392 S.W.2d 379, 380 (Tex. Civ. App.--Austin 1965, writ dism'd) (holding such an action arises from seller's duty imposed by law to collect sales tax from purchasers)).

The Debtors' argument, then, is simply wrong: the Debtors *can* be held liable in some capacity under Texas law, even if they in fact failed to collect the sales tax in question. Here, § 151.307(e) of the Texas Tax Code specifically allows the Comptroller to seek redress against the retailer – the Debtors – for sales taxes that should have been paid but were not in fact paid by the purchasers. That is, the retailer could fail to collect the tax because the purchaser failed to remit it, and nonetheless by liable to the comptroller for the uncollected, unpaid tax. The Debtors are liable for the Category 1 Taxes in their capacity as retailers of taxable items, regardless whether they actually collected the tax or not. Therefore, the Tax Liability is a tax "required to be collected or withheld" and so is a tax of a kind described in § 507(a)(8)(C). As such, the Category 1 Taxes are not dischargeable under § 523(a)(1) even if the Debtors' contention that the taxes were "uncollected" were accepted.

The Debtors also argue that the Comptroller's remedies for sellers that fail to collect sales taxes is limited to closing the seller's business pursuant to § 111.011(a) of the Texas Tax Code.

However, this argument is rebutted in two instances by the language of the Tax Code itself. First, § 111.015 provides that the Comptroller's remedies are not limited to closure of the seller's business: "the rights, powers, remedies, liens, and penalties provided by this title are cumulative of other rights, powers, remedies, liens, and penalties for the collection of taxes provided by this title and by other law." Second, as noted earlier, the Comptroller may recover uncollected sales taxes from <u>either</u> the purchaser or the seller. Consequently, the Debtors' argument on this point is also overruled.

In conclusion, based upon the plain meaning of § 507(a)(8)(C), and the language of the Texas Tax Code, which makes a seller liable for uncollected taxes, the court holds that the Tax Liability is not dischargeable.

<u>The Debtors' In Rem Liability and Whether A Chapter 11 Plan Complies With A Settlement of Determination Under Tex. Tax Code § 111.102</u>

As for the Debtors' second and third requests, the court denies them in full. With respect to the third, the Debtors ask for a ruling that "if the liability [the Tax Liability] is *in rem*, and not *in personam*, the Comptroller is entitled to a share of the net value of the business' assets, if the business were to be transferred." *Complaint*, ¶ 11 at 5. The court is not sure what the Debtors are asking for here. The debtor's business is not a separate legal entity. Thus, there is no *res* separate from the Debtors to which the alleged *in rem* liability would or could attach. The court has already determined that the Debtors can be held liable for even uncollected taxes, so the Comptroller has a claim which is entitled to participate in whatever distributions the plan makes, in accordance with the provisions of section 1129(a). What is more, the Comptroller's claim is, for the most part, a priority claim under section 507(a)(8)(C), meaning that the claim is entitled to a priority in payment and distribution as provided in section 1129(a)(9). If the Debtors'

21

contention is that the Comptroller is *not* so entitled, then the Debtors' contentions are incorrect and are here rejected.

A debtor may not choose federal preemption when doing so proves useful, then set federal preemption aside when doing so suits its perceived needs. The Debtors seem to want to eat their cake and have it too. That is essentially what the Debtors here suggest – that the court enter declaratory relief that compels the state to accept a state law insolvency plan imposed by federal court order, while at the same time depriving the state of the protections to which it is entitled under the very federal statute that the Debtors have here invoked.

The Debtors, on the one hand, want the court to "force" the Comptroller to accept the chapter 11 plan as an insolvency plan for purposes of the state statute, with or without the Comptroller's consent. At the same time, they want the state statute's standards for an acceptable insolvency plan to be substituted for the requirements that the Bankruptcy Code imposes for the treatment of this type of tax claim in bankruptcy. The Debtors cannot have it both ways, however. Once the Debtors voluntarily filed for chapter 11, they substituted the remedies under title 11 for their remedies under the Texas Tax Code. There are positives and negatives to that choice, but having made it, they must accept the negatives as the price to pay for the benefit of the positives. Under Chapter 11, the Comptroller is entitled to priority treatment, and payment in full. If the Debtors prefer the lower payments they anticipate under an insolvency plan under state law, their choice is to pursue that remedy outside bankruptcy. The ALJ all but ordered the Comptroller to work out such a plan with the Debtors in this case, so that choice is more than merely elusive. Regardless, however, the Debtors must choose.

For so long as this case remains in this court, however, the terms of the Bankruptcy Code prevail over state law to the extent of any conflict between the two schemes. *See In re Fussell*, 928 F.2d 712, 715 (5th Cir. Tex. 1991) ("… the Bankruptcy and Supremacy Clauses vest the

Bankruptcy Code with a primacy over state law…"). The Comptroller, as a creditor in this case, is entitled to the benefit of all the provisions of the Bankruptcy Code that protect its interests just as surely as the Debtors are entitled to the benefit of other provisions of the Code that protect their interests. The Comptroller cannot be confined to its state law remedies once the Debtors file for relief in this court. The Comptroller is as entitled to claim federal pre-emption as are the Debtors should the Debtors attempt to foist terms on the Comptroller that are inconsistent with its entitlements under the Bankruptcy Code – even if those terms otherwise comported with state law. On that basis alone, the Debtors' efforts to force a state law remedy onto the Comptroller that is inconsistent with the Comptroller's rights under the Bankruptcy Code must be rejected.

But there is another reason why the court would refuse the invitation to construe a chapter 11 plan as the equivalent of an insolvency plan that complies with § 111.102 of the Texas Tax Code. Basic principles of federal abstention counsel against such a course of action. Permissive or discretionary abstention of a claim is available under 28 U.S.C. § 1334(c)(1). This section provides that:

> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The doctrine of permissive abstention "'arose from traditional notions of abstention which allow courts to decline to assert otherwise valid subject matter jurisdiction in instances in which they find matters are better resolved in state court or where the interests of justice so demand.'" *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 603 n.1 (S.D. Tex. 1999) (citing *In re Simmons*, 205 B.R. 834, 847 (Bankr. W.D. Tex. 1997) (Clark, B.J.)) Permissive abstention is available as to both core and non-core claims. *See Briese v. Conoco-Phillips Co.*, 2009 U.S. Dist. LEXIS 11772, at *18 (W.D. La. Feb. 3, 2009) (citing *Matter of*

23

*Gober*, 1195 F.3d 1195, 1206 (5ᵗʰ Cir. 1996)).  The doctrine is expressly authorized to be used in bankruptcy cases by statute. *See* 28 U.S.C. § 1334(c)(1).

Here, Texas' interest in deciding whether a given insolvency arrangement meets the requirements of § 111.102 is such that the federal courts should abstain from that determination. Moreover, in the interest of comity, the court will, for the same reason, decline to rule on this issue. *See In re Fussell*, 928 F.2d at 715 ("although the Bankruptcy and Supremacy Clauses vest the Bankruptcy Code with a primacy over state law, it is beyond dispute that considerations of comity and equity militate against lightly enjoining a state criminal prosecution [or divorce law]"). State interests predominate when the issue presented is the parameters of a state law remedy unique to that state, enacted for purposes of that state's taxing scheme. *See e.g. Cody, Inc. v. Orange County (In re Cody, Inc.)*, 281 B.R. 182, 191 (S.D.N.Y. 2002) (upholding the bankruptcy court's decision to voluntarily abstain from hearing the debtor's tax disputes with the state of New York and saying that § 1334(c)(1) "has been widely applied by bankruptcy courts to abstain from hearing tax disputes between debtors and state and/or federal taxing authorities.") (collecting cases).

The Comptroller's brief noted that, although the ALJ's PFD is not a final decision on the merits since the Comptroller is supposed to issue a final decision after receiving the PFD, *M. to Dismiss*, ¶ 7 at 4-5, once the Comptroller's 'final' decision is made, the Debtors have either 20 days to request a rehearing of the decision or 30 days to seek judicial review of the decision. *Id.*, ¶ 7 at 5. The entire mechanism includes not only a means for challenging the tax determination but also a means for resolving it, consistent with the unique interests of the state in assessing and collecting revenues imposed by its own legislature.

While the court believes there are certainly circumstances in which the court ought *not* to abstain – especially when a bankruptcy estate employs the express federal remedy set out in §

505 of title 11, *see In re Fairchild Aircraft Corp.* 124 B.R. 488, 492 (Bankr. W.D.Tex. 1991), that is not the case here. The Debtors here are asking this court to *displace* a carefully crafted state law scheme with a judge-made rule of first impression. Abstention is the better course of action here. It would be inappropriate for the court to decide that a chapter 11 plan is an effective substitute for the state's insolvency plan scheme under § 111.102 of the Texas Tax Code.

## C. Conclusion

The Comptroller's Motion is granted and the Complaint is dismissed for failure to state a claim upon which relief may be granted under Rule 12(b)(6).  First, regardless of whether the Tax Liability is for an uncollected sales tax, the Debtors are personally liable for the Tax Liability and, it is, therefore, still non-dischargeable.  Second, to the extent the Debtors ask that this court waive certain requirements of the Bankruptcy Code – and find that the Comptroller is an unsecured creditor without a priority claim – this court denies such a request as having no basis in either law or fact.  Third, in the interest of comity and the court's belief that the state of Texas has a superior interest in a determination of whether a chapter 11 plan fulfills the requirements of Texas Tax Code § 111.102, the court abstains from ruling on that issue in its entirety.  The court believes that the more appropriate forum for that determination is in the Texas state courts.

# # #