**SO ORDERED.**

**SIGNED this 15th day of June, 2010.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES T. SZOSTEK | ) | Case No. 09-31623-LMC |
| and wife MARY ALICE SZOSTEK, | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| JAMES T. SZOSTEK | ) | |
| and wife MARY ALICE SZOSTEK, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Adversary No. 09-03022 |
| | ) | |
| TEXAS COMPTROLLER OF | ) | |
| PUBLIC ACCOUNTS, | ) | |
| | ) | |
| Defendant | ) | |

**DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL RE-HEARING OF ORDER DISMISSING PLAINTIFFS' ADVERSARY PROCEEDING AND DISMISSING THE COMPLAINT**

1

Came on for consideration the foregoing matter.  On July 28, 2009, James T. Szostek and his wife, Mary Alice Szostek (together, the "Debtors" or the "Plaintiffs") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   On September 22, 2009, the Debtors filed a complaint against the Texas Comptroller of Public Accounts (the "Defendant") seeking to determine (i) the Debtors' dischargeability of the Comptroller's claim, (ii) the extent of the Debtors' *in rem* liability to the Comptroller, and (iii) whether the chapter 11 plan complied with an insolvency plan under the Texas tax laws. As a basis for relief, the Complaint appears to invoke §§ 523(a)(1) and 507(a)(8). *Complaint*, ¶¶ 11, 15 at 5-6. On October 23, 2009, the Comptroller filed a motion to dismiss the Complaint (the "Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated herein through Federal Rule of Bankruptcy Procedure 7012 [Docket No. 5]. On November 5, 2009, the Debtors filed an objection (the "Objection") to the Motion to Dismiss [Docket No. 6].  More than three months after filing the Objection, on February 23, 2010, the Debtors filed an additional memorandum of law (the "Additional Objection") in support of their Objection.  On March 29, 2010, the court entered an order granting the Defendant's Motion to Dismiss and dismissing the Complaint (the "Dismissal Order") [Docket No. 8].[1]  The Debtors did not notify the court that they had filed the Additional Objection and, consequently, the court neither saw nor considered the pleading in writing the Dismissal Order.   On April 1, 2010, the Debtors filed their motion for partial rehearing of the court's Dismissal Order (the "Motion to Reconsider").   No further pleadings have been filed in this adversary proceeding.  The court assumes familiarity with the facts of this case (as pled in the Complaint) as well as with the Dismissal Order.[2]

---

[1] Also on March 29, 2010, the court entered an errata order correcting an error in the Dismissal Order [Docket No. 9].

[2] All defined terms used in this order that are not defined herein shall have the meaning ascribed to them in the Dismissal Order.

**A. The Pleading**

In their Motion to Reconsider, the Debtors make a number of arguments in asking for a partial reconsideration. However, the Debtors first note that their request is limited. More specifically, the relief they seek in the Motion to Reconsider

> will not affect most of the [Dismissal Order], insofar as the refunds liability analyzed in the [Dismissal Order] is concerned. Plaintiffs' counsel was unaware of Texas Tax Code § 151.037(e) in drafting the Complaint and the [Additional Objection]. … Nor will the [Additional Objection] have any hearing [*sic*] on this Court's decision to abstain from making the sort of insolvency finding which the Texas Tax Code empowers the District Court for Travis County, Texas to make.

*Mot. to Reconsider.*, at ¶¶ 3-4. The Debtors assert that their Motion to Reconsider will affect the Dismissal Order in two ways:

> (a) Part of Szostek's PFD (Proposal for Decision) dealt with taxes that were never collected. Not having been collected, they could not have been returned prior to the holding time, or upon insufficient documentation, so as to give rise to personal liability for the merchant under Texas Tax Code § 151.037(e). Such uncollected taxes are referenced in the PFD at its Pages 2 and 4.

> (b) This Court has glossed the PFD as though the PFD found that Szostek had the worst possible kind of 'under-reported sales' problem, *i.e.*, that the Debtor pocketed some sales taxes and then falsified downward the amount of sales made, to match the unsquandered tax amounts still on hand. Memorandum Decision and Order, p. 12. The words 'under-reported sales' do not appear in the PFD. The PFD recognizes that federal tax returns were used to determine total sales. PFD, page 2, part II.B. Insufficient tax submissions on those sales, were identified in the PFD in two areas: improper refunds (Exam 1) and 'additional taxable sales,' Exam 2. PFD, page 2. 'Taxable' should suggest sales that should have been taxed, but weren't. The PFD goes on to state, 'The exam makes assessments based on differences the auditor found between sales Petitioner reported in its federal income tax returns, and those reported to the Comptroller.' PFD. Page 4.

*Id.* at ¶ 5. In other words, the Debtors object to the court's characterization of their Category 2 Taxes[3] as though they had been collected and not refunded. The Debtors think Category 2 Taxes

---

[3] The Dismissal Order described the Debtors' Tax Liability – based on the Complaint and the PFD – as follows: "(i) improperly refunded … sales taxes in the amount of $91,694 ("Category 1 Taxes"), (ii) under-reported taxable sales (based on sales the Debtors reported to the Comptroller compared to sales the Debtors reported on their federal income tax returns) in the amount of $50,719 ("Category 2 Taxes"); and (iii) … use taxes in the amount of $26,109 ("Category 3 Taxes")."

would be more properly characterized as sales taxes that were never collected in the first place, due to the Debtors' belief that the underlying sales were not taxable. *Id.* According to the PFD, the Category 2 Taxes represent tax assessments made by the Defendant based on "differences the auditor found between sales Petitioner [the Debtors] reported in its federal income tax returns and those reported to the Comptroller." *PFD*, at 4. The Debtors believe that there are two valid explanations for the Category 2 Taxes: "one is that some of the sales weren't believed to be state-taxable (*i.e.*, the sales were treated as not requiring collection), and collections weren't made. … [The other is] that sales tax was collected and misappropriated, and sales tax reports were falsified accordingly." *Id.* The Debtors contend that the second characterization is both inaccurate, and inappropriate for purposes of a 12(b)(6) motion.

The Debtors also take issue with the court's analysis that Szostek operated as a sole proprietorship. The Debtors state that they have never "contended that there is an 'entity' difference between SZOSTEK and JOLLY JIM'S PET or JOLLY JIM'S TOO. The point Plaintiff was trying to make, is that if SZOSTEK decides to close the pet stores and spend the rest of his working career selling life insurance, the COMPTROLLER cannot enjoin him from carrying on that activity." *Id.* ¶ 6. The court understands the Debtors' point, but disagrees with it. The court will not reconsider its position on this issue.

Lastly, the Debtors argue that the authorities cited by the Comptroller, and relied on by this court in the Dismissal Order, are inapposite. "The case law was the subject of SZOSTEK's [Additional Objection]. … The facts of those opinions and the *ratio decidendi* in each of the cases simply do not hold, and will not yield a rule, that failure to collect a tax obligations the seller to pay it personally. (None of those Texas cases, either, involves a refund to the customer that would bring it within the ambit of Tax Code § 151.307(e). SZOSTEK accordingly implores the Court, to review his … [Additional Objection]." *Id.* ¶ 7.

4

As noted above, the court had no notice that the Additional Objection had been filed and, accordingly, did not consider it in writing the Dismissal Order.  For this reason, the court will grant the Motion to Reconsider in part in order to consider these additional arguments. Based upon the Debtors' assertions in the Motion to Reconsider, the court is <u>only</u> granting reconsideration of its Dismissal Order with respect to the Category 2 Taxes.

*The Additional Objection*

First, the Debtors reiterate their arguments with respect to *In re Fox*, 609 F.2d 178 (5th Cir. 1980). The Additional Objection does not add anything to the arguments that the Debtors made in the Objection and in the Complaint. *Additional Obj.*, ¶ 2. The Dismissal Order addressed this issue at length and the court will not reconsider the Debtors' arguments on this issue here.

Second, the Debtors re-attack the authorities used by the Comptroller in support of its Motion to Dismiss. In particular, the Debtors take issue with the Comptroller's assertion that the Debtors are personally liable for the Category 2 Taxes incurred by the pet stores. The Debtors once again argue that the Comptroller's sole remedy is one that is *in rem* and, consequently, limited to closure of the business under § 111.011 of the Texas Tax Code. "The merchant who chose to close up shop, once enjoined, could go on to some other means of earning her livelihood, and never have to pay the tax." *Additional Obj.*, ¶ 3. The Debtors go on to distinguish *Davis v. State*, 940 S.W.2d 946 (Tex. App. – Austin 1995), *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835 (Tex. App. – Austin 1990), *Calvert v. Canteen Co.*, 371 S.W.2d 556 (Tex. Sup. 1963), *Bullock v. Delta Industrial Construction Co.*, 668 S.W.2d 502 (Tex. App. – Austin 1984), and *Reaves & Becker v. Wilkes*, 392 S.W.2d 379 (Tex. App. – Austin 1965, *writ dism'd*). The Debtors argue that not only do "[a]ll of those cases pre-date the present Tax Code, … none of them presents the pertinent fact pattern for this case, *i.e.*, a vendor who merely failed to collect the tax." *Additional Obj.*, ¶ 5. The Debtors note that in the cases cited by the

Comptroller, the taxes were collected, whereas here, they were not.  With respect to the *Calvert* case, in which taxes were <u>not</u> collected, the Debtors believe that the case is inapposite because it is "a vending machine case. … [and] The statute then in effect … placed personal liability upon the seller for the tax, if the method of sale did not permit collection fr[o]m the purchaser." *Id.* The crux of the Debtors argument is that none of the cases cited by the Comptroller are on point, because none involve a merchant who never collected the taxes (the facts of this case, according to the Debtors).

The Debtors also contend that the Comptroller failed to provide any statutory support for its position. The Debtors say it thusly:

> [T]he COMPTROLLER does not identify, within his cited array of statutory remedies, any law that would impose a personal liability on the vendor, for a sales tax not collected. Tex. Tax Code § 151.002 is merely a statement as to the applicability for Tax Code definitions to certain exempt transactions, … Tax Code § 111.015, stating that the Comptroller's remedies are 'cumulative,' adds nothing to any remedy unless one can first be found, to add onto. The remedy that is touted as 'collection suits in state court,' Tax Code § 111.010, does not identify whom the Comptroller can sue, or what remedy can be sought – other parts of the Code would have to supply that. The lien filing statute, § 113.002, has as its predicate, that there first be 'taxes, fines, interest … [or] penalties due by a person to the state.' The personal liability for the sales tax, is on the purchaser. Tax Code §§ 151.051, 151.052. Section 113.002 adds the ability to send notices, to the arsenal of procedures the Comptroller may use, but does not expand fault or liability. Before assets can be levied on, under Tax Code § 111.021, there first must be 'a person [who] is delinquent in the payment of an amount required to be paid' under the Tax Code. Admittedly, SZOSTEK could have personal fraudulent transfer liability under § 111.021(d)(2) and (f), if he had participated in such transfers, but nothing of the kind has been suggested.

*Additional Obj.*, ¶ 8. The Debtors conclude with the following remarks: "Two legislatures did not see fit to impose a personal liability for mere failure to collect a sales tax. One is in Washington, D.C., the other is in Austin. The Fifth Circuit saw the matter similarly in *Fox*: failure to collected is not so grievous as to amount to personal debt, or to non-dischargeable debt."

## B. Analysis

We are here granting the Motion to Reconsider only with respect to the Category 2 Taxes. The court agrees with the Debtors' that, for purposes of a motion to dismiss, it was inappropriate to characterize the Category 2 Taxes as collected but not turned over to the state. After all, the Debtors are correct that the PFD merely describes the Category 2 Taxes as "assessments based on differences the auditor found between sales Petitioner reported in its federal income tax returns and those reported to the Comptroller." *PFD*, at 4. Therefore, on Motion to Reconsider, the court will reexamine the Debtors' Motion to Dismiss the Comptroller's Complaint with regard to the alleged nondischargeability of Category 2 Taxes with the assumption that the Category 2 Taxes were never physically collected by the Debtors from their customers.

The court will not reconsider its analysis with respect to 11 U.S.C. §§ 523(a)(1) and 507(a)(8). Therefore, the Debtors' Motion to Reconsider and, by extension, the Additional Objection is denied with respect to the Debtors' arguments regarding the Fifth Circuit's position on §§ 523(a)(1) and 507(a)(8). *Dismissal Order*, at 11-17. Thus, so long as the Debtors can be liable under Texas law for the Category 2 Taxes, the liability for such taxes will be non-dischargeable under section 523(a)(1).

The court concludes that the Debtors *can* be held liable for the Category 2 Taxes, on a number of bases. However, the court agrees that neither § 111.016(a) nor § 111.011(a) afford a basis for liability. Section 111.016(a) does not apply to the Category 2 Taxes because that subsection specifically refers to "any person who receives or collects a tax…" § 111.016(a); *State of Texas v. Crawford & Wills*, 262 S.W.3d 532, 539-540 (Tex. App. Austin, Aug. 21,

2008). Because, for purposes of this motion, we are assuming that the Debtors did not physically receive or collect the Category 2 Taxes, § 111.016(a) is inapplicable at this juncture.[4]

Section 111.011(a) also does not afford a basis for liability, though for a different reason than that articulated by the Debtors. This section of the Texas Tax Code does not impose liability at all. It is a remedies provision. Section 111.011(a) is found in Title 2, Subchapter B, titled 'Enforcement and Collection' of the Tax Code. It is one of a number of remedies available to the state when liability is otherwise imposed. It does not itself impose liability. *See Wimmer v. State*, 2004 Tex. App. LEXIS 1065 (Tex. App. Austin, Feb. 5, 2004) *rev. denied Wimmer v. State*, 2004 Tex. LEXIS 585 (Tex. June 25, 2004) (affirming the lower court's imposition of monetary tax liability *and* the lower court's imposition of an injunction). In other words, prior to enjoining a person from doing business, the statute requires that the person first be *liable* to the state for taxes. § 111.011(a) ("If a person … fails to file a report or pay the tax as required by this title, the attorney general may bring a suit for an injunction…").[5]

There are other provisions of the Texas Tax Code that *do* impose liability on the Debtors, even on the facts as assumed by the court for purposes of this motion. The Limited Sales, Excise, and Use Tax Act (the "Sales Tax Act"), Title 2, Subtitle E of the Tax Code, is relevant in this case for purposes of finding that the Debtors are liable for the Category 2 Taxes. There is no

---

[4] The court will take a second to reiterate that it is <u>not</u> passing on the validity of the Tax Liability for purposes of 11 U.S.C. § 505, and, therefore, does not rule on whether the Tax Liability was proper in the first instance. That question was never put before the court in this case. The court's discussion of § 111.016 is limited to whether the Debtors can be held liable under that section of the Texas Tax Code for purposes of discharge.

[5] As an aside, the court notes that the plain language of section 111.011(a) does not limit its application to situations in which a taxpayer has collected the required taxes. Section 111.011(a) provides: "If a person engaged in a business the operation of which involves the receipt, collection, or withholding of a tax imposed by this title fails to file a report or pay the tax as required under this title, the attorney general may bring suit for an injunction prohibiting the person from continuing in that business until the report is filed and the tax is paid." The court could not find any case law imposing such a limitation, nor did the Debtors offer any authorities for their proposition. Furthermore, § 111.011(a) uses the word "may" (unlike subsection (b) of that section, which uses "shall"), indicating that injunctive relief is but one of a number of remedies that might be available to the state pursuing a taxpayer who is otherwise liable for a tax. Other sections offer other remedies: § 111.010, suit to collect the tax liability; § 111.0047, suspension or revocation of a permit or license; and § 113.001, imposition of liens. The remedies available to the state are, by statute, cumulative. *See* Tex. Tax Code, § 111.015.

doubt (and the Debtors have never argued otherwise) that the Sales Tax Act applies to retailers themselves as well as their customers. A sales tax is imposed "on each sale of a taxable item in this state." § 151.051. A retailer that makes a sale subject to the Sales Tax Act

> <u>shall</u> add the amount of the tax to the sales price, and when the amount of the tax is added: (1) it becomes a part of the sales price; (b) it is a debt of the purchaser to the seller until paid; and (3) if unpaid, it is recoverable at law in the same manner as the original sales price.

§ 151.052 (emphasis added).[6] The use of the word "shall" indicates an obligation is imposed on the retailer. By extension, if the retailer fails to add the tax to the sales price, it has failed to meet the obligation there imposed. The Texas Tax Code allows the state, in enforcing the Sales Tax Act, to proceed against a consumer. *See* Tex. Tax Code, § 151.515. The language used in this section is significant, however, in that it does not *limit* the state to pursuing only the consumer. The statute says, "[t]his chapter does not *prohibit* the comptroller from proceeding against a consumer for an amount of tax that the consumer should have paid but failed to pay." *Id.* (emphasis added). The word "only" is not to be found in the section. It is a statute of permission, not restriction. What the Sales Tax Act <u>does not</u> say is in itself important. *See Church of Scientology v. IRS*, 484 U.S. 9, 17-18 (U.S. 1987) ("All in all, we think this is a case where common sense suggests, by analogy to Sir Arthur Conan Doyle's 'dog that didn't bark,' that an amendment having the effect petitioner ascribes to it would have been differently described by its sponsor, and not nearly as readily accepted by the floor manager of the bill"). For comparison's sake, consider Title 2, Subchapter D, Section 151.102, titled 'User Liable for Tax,' which imposes a use tax specifically on the user or consumer, and not the retailer, when the tax has not been collected. The statute provides in full:

> (a) The person storing, using, or consuming a taxable item in this state is liable for the tax imposed by Section 151.101 of this code, and except as provided by

---

[6] The previous version of this section is V.A.T.S. Tax.-Gen. arts 20.01, § 1; 20.021, § (A).

> Subsection (b) of this section, the liability continues until the tax is paid to the state.
> (b) A person storing, using, or consuming a taxable item in this state is not further liable for the tax imposed by Section 151.101 of this code if the person pays the tax to a retailer engaged in business in this state or other person authorized by the comptroller to collect the tax and receives from the retailer or other person a purchaser's receipt given as provided in Section 151.103 of this code.

§ 151.102. Clearly, the Texas legislature knows how to impose certain tax liability exclusively on either the retailer or the user, if it so intends. It did so in § 151.102. It did not do so in § 151.515.

An even more compelling reason for concluding that the Debtors are liable under Texas law for the Category 2 Taxes is found in the Sales Tax Act's exemption provisions. Allowing the Comptroller to seek unpaid sales taxes from a retailer makes sense in the context of the Sales Tax Act's sales tax exemption structure. In the Motion to Reconsider, the Debtors argued:

> There are at least two explanations for a difference between sales reported to the IRS and sales reported to the Texas Comptroller; one is that some of the sales weren't believed to be state-taxable (i.e., the sales were treated as not requiring collection), and collections weren't made. The other, far darker inference, would be the one this Court made: that sales tax was collected and misappropriated, and sales tax reports were falsified accordingly. Such nefarious conduct was not observed by the Administrative Law Judge; he in fact recommended an insolvency plan. PFD, page 11. To close off one possible set of innocent facts, so as to subscribe to a possible set of nefarious facts, is something that should not be done in a Rule 12 (b)(6) setting, particularly when the innocent set of facts is the more implicit.

*Mot. To Reconsider*, ¶ 5 at 3. Thus, the Debtors are arguing that they did not collect the Category 2 Taxes because they believed that certain items they sold were exempt from sales tax. They then claim that, by not collecting the sales tax in the first instance, they cannot be liable for not remitting them. The argument, however, cannot be right, because, if accepted, it would read section 151.054 out of Texas Tax Code.[7]

---

[7] As has been noted by a respected jurist, "[a] 'cardinal principle of statutory interpretation' is that no provision 'shall be superfluous, void, or insignificant.' … As context colors content, we look beyond the individual provision

Section 151.054, titled 'Gross Receipts Presumed Subject to Tax,' provides in full:

(a) Except as provided by Subsection (d) of this section, all gross receipts of a seller are presumed to have been subject to the sales tax unless a properly completed resale or exemption certificate is accepted by the seller.

(b) A sale is exempt if the seller receives in good faith from a purchaser, who is in the business of selling, leasing, or renting taxable items, a resale certificate stating that the tangible personal property or service is acquired for the purpose of selling, leasing, or renting it in the regular course of business or for the purpose of transferring it as an integral part of a taxable service performed in the regular course of business.

(c) A sale is exempt if the seller receives in good faith from a purchaser an exemption certificate stating qualifications for an exemption provided in Subchapter H of this chapter.

(d) A sale of liquor, wine, beer, or malt liquor by the holder of a manufacturer's license, wholesaler's permit, general class B wholesaler's permit, local class B wholesaler's permit, local distributor's permit, or a general, local, or branch distributor's license issued under the Alcoholic Beverage Code to the holder of a retail license or permit issued under the Alcoholic Beverage Code is presumed to be a sale for resale. In a sale to which this section applies, the seller is not required to receive a resale certificate from the purchaser.

(e) Properly completed resale or exemption certificates should be in the possession of the seller at the time the nontaxable transaction occurs. If the seller is not in possession of these certificates within 60 days from the date written notice requiring possession of them is given to the seller by the comptroller, deductions claimed by the seller that require delivery of the certificates shall be disallowed. If the seller delivers the certificates to the comptroller within the 60-day period, the comptroller may verify the reason or basis for exemption claimed in the certificates before allowing any deductions. A deduction may not be granted on the basis of certificates delivered to the comptroller after the 60-day period.

§ 151.054 (emphasis added).[8] The statute does not permit the seller to unilaterally determine that a given transaction is exempt from taxation. To the contrary, *all* gross receipts are presumed to have been subject to the sales tax unless a properly completed exemption certificate has been accepted by the seller. *Id.*, subparagraph (a). The Debtors, as sellers, must be liable for

---

and consider [the relevant section] … as part of a coherent whole- [here, the Sales Tax Act]." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 330 (3rd Cir. 2010) (Ambro, B.J., dissenting).

[8] The Administrative Rule dealing with Exemption Certificates is 34 TAC § 3.287. Because the court did not believe that it added anything to the current discussion, it is omitted herein.

uncollected sales taxes if they do not have in hand a properly completed exemption certificate, because otherwise the exemption statute itself would be rendered a nullity. Indeed, retailers have been found liable for uncollected sales taxes due to the retailer's mistaken belief that the item was exempt from taxation. *E. de la Garza v. Strayhorn & Abbott*, 2005 Tex. App. LEXIS 9310 (Tex. App. Austin, Nov. 10, 2005); *see also Alpine Indus., Inc. v. Strayhorn & Abbott*, 2004 Tex. App. LEXIS 6242 (Tex. App. Austin, Jul. 15, 2004) rev. denied *Alpine Indus. v. Strayhorn*, 2005 Tex. LEXIS 307 (Tex., Apr. 8, 2005). Were the court to accept the Debtors argument, the Comptroller would be forced to allow deductions claimed by a retailer under subsection (d) essentially on the retailer's say so, rendering compliance with § 151.054 unnecessary. That reading would, of course, read § 151.054 right out of the Texas Tax Code, in clear violation of long-accepted standards of statutory interpretation. *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985) (applying the "'the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative…'").

The Texas Administrative Code[9] provides additional support for the imposition of liability for the Category 2 Taxes. Specifically, 34 Tex. Admin. Code § 3.282 states: "(m) <u>[b]oth sellers and purchasers</u> are subject to audit and assessment of tax on any transactions on which tax

---

[9] According to the Texas Secretary of State, the Texas Administrative Code (TAC)

> is a compilation of all state agency rules in Texas. There are 16 titles in the TAC. Each title represents a subject category and related agencies are assigned to the appropriate title.

> In 1977, the TAC was created by the Texas Legislature under the Administrative Code Act (Government Code, §§2002.051-2002.056). In the Administrative Code Act, the Legislature directed the Office of the Secretary of State to compile, index, and cause to be published the Texas Administrative Code.

> State agency rule writers, in cooperation with the Office of the Secretary of State, had begun the task of organization and systematic dissemination of state agency rules in 1975 with the passage of the Administrative Procedure and Texas Register Act (Government Code, §2001 and §2002).

http://www.sos.state.tx.us/tac/ (last visited June 15, 2010).

was due but has not been paid." (emphasis added).  Additionally, 34 Tex. Admin. Code § 3.286,

titled 'Seller's and Purchaser's Responsibilities,' provides in relevant part:

(d) Collection and remittance of the tax.

(1) Each seller must collect the tax on each separate retail sale in accordance with the statutory bracket system in *Tax Code § 151.053*… The tax is a debt of the purchaser to the seller until collected.  …

(2) The sales tax applies to each total sale, not to each item of each sale. … When tax is collected properly under the bracket system, the seller is not required to remit any amount that is collected in excess of the tax due.  Conversely, when the tax collected under the bracket system is less than the tax due on the seller's total receipts, the seller is required to remit tax on the total receipts even though the seller did not collect tax from customers.
…

(4) A seller who advertises or holds out to the public that the seller will assume, absorb, or refund any portion of the tax, or that the seller will not add the tax to the sales price of taxable items commits a criminal offense. *See* § 3.305 of this title.

(e) Payment of the tax.

(1) Each seller, <u>or</u> purchaser who owes tax that was not collected by a seller, must remit tax on all receipts from the sales or purchases of taxable items less any applicable deductions.
…

(5) A non-permitted purchaser who owes sales or use tax that was not collected by a seller must remit the tax to the comptroller on or before the 20th of the month following the month in which the taxable event occurs.

34 Tex. Admin. Code § 3.286 (emphasis added).[10]  Notably,

We give serious consideration to an agency's construction of a statute, as long as the construction is reasonable and does not contradict the plain language of the statute.  We recognize that the legislature intends an agency created to centralize expertise in a certain regulatory area 'be given a large degree of latitude in the methods it uses to accomplish its regulatory function.'

We construe the text of an administrative rule under the same principles as if it were a statute.  We bear in mind that an administrative agency has the power to interpret its own rules, and its interpretation is entitled to great weight and

---

[10] Section 151.503 deals with sales taxes imposed "[i]f the sales price involves a fraction of a dollar..."

deference. The agency's construction of its rule is controlling unless it is plainly erroneous or inconsistent.

*Alpine Indus., Inc. v. Strayhorn & Abbott*, 2004 Tex. App. LEXIS 6242, at *7-8 (Tex. App. Austin, Jul. 15, 2004) (internal citations omitted). Texas cases have specifically supported the Comptroller's interpretation. In *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835, 838 (Tex. App. Austin –1990), the court noted that:

> [i]n 1967, an attorney general opinion said that the sales tax could be collected from either the purchaser or the seller. Op. Tex. Att'y Gen. No. M-165 (1967). The Comptroller's rules have provided since 1975 that the tax may be collected from the seller or purchaser or both until the tax has been paid:
>
> > Both sellers and purchasers are subject to audit and assessment of tax on any transactions on which tax was due but has not been paid. The Comptroller may proceed against either the seller or the purchaser, or against both, until the tax, penalty and interest has been paid.
>
> Comptroller Rule 3.282, 34 T.A.C. 3.282 (effective 12/15/75).
>
> This administrative interpretation has been in effect through amendments of the statute. The legislature is deemed to have accepted an administrative interpretation or policy that endured through amendments of the statute in question.

*Id.* (certain citations omitted). If a Texas court concludes that the Comptroller may proceed against a seller for unpaid sales taxes, this court, as a federal court construing state law, is obliged to follow that holding. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Accordingly, the Debtors are liable for the uncollected Category 2 Taxes under Texas law, whether collected or uncollected, and consequently the Category 2 Taxes are nondischargeable.

Lastly, the court addresses the Debtors arguments that the case law cited in the Dismissal Order does not apply to the case at bar.[11] The court notes at the outset that the Debtors are correct in one sense: the facts of those cases are not on all fours with the facts before the court here. But so what?[12] The reasoning behind those decisions is still sound, as will be seen by a closer look at the cases. The Debtors argue that the Comptroller's use of *Davis v. State*, 904 S.W.2d 946 (Tex. App. – Austin 1995) in support of its position is mistaken because liability in the *Davis* case was

---

[11] One of the Debtors arguments is that the cases cited in the Dismissal Order "pre-date the present Tax Code…" *Additional Obj.* at 4.  Except with respect to the Debtors' attempt to distinguish *Calvert v. Canteen Co.*, 371 S.W.2d 556 (Tex. 1963), the Debtors fail to say much more on this point and the court fails to see how that fact is relevant in this case.  For instance, the 1963 version of § 151.052 provides: "'Every retailer shall add the sales tax imposed by Article 20.02 of this Chapter to his sale price and when added the tax should constitute a part of the price, shall be a debt of the purchaser to the retailer until paid, and shall be recoverable at law in the same manner as the purchase price.' Art. 20.021" *Reaves & Becker v. Wilkes*, 392 S.W.2d 379, 380 (Tex. App. – Austin 1965, *writ dism'd*) (quoting the 1963 Tax Code.)  This does not appear to be a substantial departure from the current § 151.052.  If the Debtors wanted to make a more substantive argument on this point, they should have done it.  The court cannot guess as to which change of the Texas Tax Code substantively affects the Debtors' position here.  Because this position is not stated with any detail or support, it is overruled.

[12] The Dismissal Order cited in one instance to *Calvert v. Canteen Co.*, 371 S.W.2d 556 (Tex. 1963).  That case was one in which the retailer sold property in vending machines.  At the time, a 2% sales tax was imposed on "'each item or article of tangible personal property when sold at retail in this State.'" *Id.* at 558 (quoting Article 20.02).  At issue was Article 20.02(A), which provided "Method of Collection and Rate of Limited Sales Tax.  The tax hereby imposed shall be collected by the retailer from the consumer. (1) The tax shall be as follows and shall be collected by using the following bracket system formula on each retail sale: …" 371 S.W.2d at 557 (quoting Art. 20.02(A)).  At the time, under the relevant bracket formula, if the price of an item was less than 24 cents, the retailer was not to impose a tax on the consumer.  Despite this formula, the court held that the retailer nonetheless owed sales taxes on the items it sold that cost less than 24 cents.  The court held:

> We construe Article 20.02 as levying a two per cent limited sales tax - a transaction tax - on retail sales, with the tax to be collected in accordance with the rates enumerated in the bracket system formula of Article 20.02(A). The tax is to be collected by the retailer from the consumer in each separate retail sale at the rates and to the extent authorized by the bracket system formula. The retailer pays the whole tax if his sales do not permit collection of any portion of the tax from the consumer, such as respondents here. The retailer pays a portion of the tax if his sales are preponderantly in certain brackets, e.g., fifty-one cents to seventy-four cents; the retailer collects more than the tax from the consumer if his sales are preponderantly in other brackets, e.g., twenty-five cents to forty-nine cents. It is only upon sales of fifty cents and multiples thereof that the tax paid by the consumer is the same as that collected by the retailer and paid to the Comptroller. The bracket system was utilized by the Legislature for collection purposes in contemplation of the fact that it is impossible for the retailer to add exactly two per cent to the sales price of every article sold. The law of averages was invoked to balance the impact of the tax upon retailer and consumer, and to permit the retailer to collect the tax from the consumer to the extent possible under the limitations of the bracket system.

*Id.* at 558.  (There was a vigorous dissent in this case.)  In 1963, the Texas legislature amended the Tax Code to exempt sales of items under 24 cents.  In any event, the court once again notes that it agrees with the Debtors that the factual predicate of the *Calvert* case is somewhat different than the case faced by the court here.  However, the court did not solely or even heavily rely on the Calvert case in its Dismissal Order.  It cited it only as additional source material for the proposition that a retailer may be found liable for an uncollected sales tax.

premised on the fact that Davis had already collected the tax. *Additional Obj.* at 3. Davis was

sued individually by the state. Davis believed that his relationship (as a retailer) with the state

was limited to a debtor-creditor relationship and for this reason the state did not have an interest

in the collected taxes until they were actually remitted; consequently, he could not have been

liable for either conversion of the collected sales taxes or breach of fiduciary duty. *Id.* The *Davis*

court overruled Davis' arguments and held him liable for the collected taxes. Said the court:

> While sellers have a legal duty to collect sales taxes from purchasers, both sellers
> and purchasers are liable to the state for sales taxes. *Bullock v. Foley Bros. Dry
> Goods Corp.*, 802 S.W.2d 835, 838 (Tex. App.--Austin 1990, writ denied) ("The
> tax may be collected [by the comptroller] from the seller or purchaser or both
> until the tax has been paid. . . ."); *Bullock v. Delta Indus. Constr. Co.*, 668 S.W.2d
> 502, 504 (Tex. App.--Austin 1984, no writ) (upholding authority of state to collect
> sales tax from sellers when sellers defaulted on obligations to collect sales tax
> from purchaser); *see also* Tex. Tax Code Ann. § 151.417 (West 1992) (providing
> for direct payment of sales tax by purchaser under some circumstances). Both
> sellers and purchasers can therefore be characterized as taxpayers. However, the
> seller must also be characterized as a tax collector, and because of this, seller and
> purchaser liability to the state as taxpayers arises for differing reasons: the
> purchaser, as a statutory debtor to the seller but ultimately liable to the state, owes
> sales tax on its purchase transaction; the seller also owes the state the sales taxes a
> customer incurs because the seller must, under the state's authority, collect those
> taxes. Under the [Sales Tax] Act, then, the economic burden of the tax is on the
> purchaser: the sales tax will either be collected by the seller from the purchaser
> under the state's authority and then remitted to the state; or, if the seller fails to
> bill the purchaser, the tax will be collected directly by the state from either the
> seller or purchaser. *See Malcuit v. State*, 134 B.R. 185, 187 (Bankr. N.D. Tex.
> 1991) (observing that burden of sales tax is on purchaser and that seller collects it
> on behalf of the state).

*Id.* at 952-953 (emphasis added). Ultimately, the court in *Davis* held that even though the pre-

1987 tax code does not contain express language "describing the seller as an agent for the

collection of the state's taxes or providing that the taxes collected be held in trust for the state,

the Act's provisions nevertheless set forth an implicit agency-principal relationship, rather than a

debtor-creditor relationship, between sellers and their role as tax collectors and the state." *Id.* at

953. Thus, the court in *Davis* ruled that retailers "owe the state the sales taxes" by virtue of the

retailer's obligation to collect those taxes from the purchaser. The obligation cannot be dodged by the fiat of simply not collecting the tax, as the Debtors' argument suggests.

Although the Debtors attempt to distinguish *Davis* on its facts, the Debtors simply gloss over the relevant discussion in the *Davis* opinion about retailer liability. The court does not believe that the *Davis* case is inapposite to this case and therefore disagrees with the Debtors' argument.

With similar arguments, the Debtors try to distinguish both *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835 (Tex. App. – Austin 1990) and *Bullock v. Delta Industrial Construction Co.*, 668 S.W.2d 502 (Tex. App. – Austin 1984). More specifically, the Debtors argue that the *Foley Bros.* and *Delta Industrial* cases are distinguishable because both Delta and Foley Bros – who were being sued for the recovery of a sales tax – were <u>purchasers</u> that did not pay a sales tax as opposed to retailers that failed to <u>collect</u> a sales tax. *Additional Obj.*, at 4. In the *Foley Bros.* case, Foley operated department stores in Texas and purchased a number of items from different vendors for either resale or its own use. 802 S.W.2d at 837. Foley was to pay taxes on the items it bought for its own use. The Texas Comptroller found that for a certain period of time, Foley failed to pay the required sales taxes on certain items. *Id.* Foley argued that it, as purchaser, was not liable to the <u>state</u> for unpaid sales taxes; Foley believed that, unless it was sued by a <u>retailer</u> for the recovery of unpaid taxes under § 151.052, it did not need to pay them at all. *Id.* at 838. The court disagreed and said:

> In Texas, sales and use taxes are transaction taxes. *Calvert v. Canteen Co.*, 371 S.W.2d 556, 558 (Tex. 1963). <u>Both vendors and purchasers are liable to the state for these taxes</u>. *Id.*; *Delta Industrial*, 668 S.W.2d at 504. The sales tax in Texas is not a retailer's occupation tax. See *American Transfer and Storage Co. v. Bullock*, 525 S.W.2d 918, 923 (Tex. Civ. App. 1975, writ ref'd).
>
> In 1967, an attorney general opinion said that the sales tax could be collected from either the purchaser or the seller. *Op. Tex. Att'y Gen*. No. M-165 (1967). The

Comptroller's rules have provided since 1975 that the tax may be collected from the seller or purchaser or both until the tax has been paid:

> Both sellers and purchasers are subject to audit and assessment of tax on any transactions on which tax was due but has not been paid. The Comptroller may proceed against either the seller or the purchaser, or against both, until the tax, penalty and interest has been paid.

Comptroller Rule 3.282, 34 T.A.C. 3.282 (effective 12/15/75).

This administrative interpretation has been in effect through amendments of the statute. The legislature is deemed to have accepted an administrative interpretation or policy that endured through amendments of the statute in question. *Bullock v. House of Lloyd*, No. 3-89-129-CV, Tex. App. -- Austin, August 8, 1990 (not yet reported); *Calvert v. Houston Lighting & Power Co.*, 369 S.W.2d 502, 509-510 (Tex. Civ. App. 1963, writ ref'd n.r.e.).

…

<u>That a retailer fails to add tax to the bill does not mean it is not due and owing.</u> *See Reaves & Becker v. Wilkes*, 392 S.W.2d 379, 380 (Tex. Civ. App. 1965, writ dism'd) (that retailer did not charge tax at time of sale did not mean was not due and could not be collected later). That a seller defaults on its obligations should not prevent the State from collecting the tax owed by the purchaser. *Delta Industrial*, 668 S.W.2d at 504.

*Foley Bros.*, 802 S.W.2d at 838 (emphasis added).

The facts in *Bullock v. Delta Indus. Construction Co., Inc.*, 668 S.W.2d 502 (Tex. App. – Austin 1984) are similar to those in *Foley Bros.* Delta was a general contractor that performed construction contracts in the Beaumont area; in these construction contracts, Delta incorporated tangible personal property which it had purchased into the real property it was building. *Id.,* at 503. Delta did not pay any taxes on its personal property purchases, and arranged for the purchased property to be delivered to a construction site in a city that imposed no use or sales taxes. *Id.* Delta was ultimately assessed a sales tax; Delta appealed. *Id.* The court (somewhat summarily) stated: "[T]he sales tax … is a transaction tax, <u>and either the seller or the purchaser may be looked to for payment</u> of the tax." *Id.* at 504 (emphasis added).

18

Lastly, the Debtors attempt to distinguish *Reaves & Becker v. Wilkes Co.*, 392 S.W.2d 379 (Tex. App. – Austin 1965) on the basis that it "sheds no light whatsoever upon the question of personal liability for failure to collect." *Additional Obj.* at 5. In *Reaves*, Reaves & Becker bought air conditioning and heating equipment from Wilkes Co. 392 S.W.2d at 380. Because Wilkes was not certain that the sales were subject to a tax, it did not charge Reaves & Becker a sales tax. *Id.* Once the Comptroller determined that the tax was due and owing, Wilkes sued Reaves & Becker for the previously uncollected sales tax. *Id.* Reaves & Becker refused to pay. The issue before the court was "[c]an a retailer not charge a sales tax and sue thereafter on 'account' and recover it?" *Id.* The court answered in the affirmative. The Tax Code (both the previous version and this version) provide that the sales tax should be collected by the retailer from the consumer. *Id.* The statute did not say *when* such collection needed to take place, just that, at some point, the retailer collect the tax, which is exactly what Wilkes was trying to do by suing Reaves & Becker. *Id.* at 380-381. For this reason, Wilkes' arguments were overruled and it was required to pay the sales tax. *Id.*

The decision in *Reaves & Becker* is not inconsistent with the ruling made here. Retailers are free to sue their customers for sales taxes that the retailer failed to collect in the first instance. That is clear from the plain language of § 151.052(a)(3). *Reaves & Becker* confirms that right. The case does not stand for its correlative, however – it does not mean that the retailer is thus free not to collect from its purchaser. To the contrary, the case affirms that the retailer who fails to collect from its purchaser is liable for the resulting uncollected tax.

The court also finds support for its holding from *Highway Contractors, Inc. v. West Texas Equipment Co.*, 617 S.W.2d 791, 795 (Tex. Civ. App. Amarillo 1981). In the *West Texas* case, the court held that the statute of limitations for a retailer to sue a purchaser to recover

19

uncollected sales taxes began to run when the retailer paid the uncollected sales tax to the state. *Id.* at 795 (saying "[t]hus, upon payment by West Texas, the sales tax became 'a debt of (Highway Contractors) to (West Texas) until paid … recoverable at law in the same manner as the purchase price….'"). Once again, the *West Texas* case was not a case in which the state sued the retailer for an uncollected tax, and, therefore, is not on all fours with the facts at bar. However, in *West Texas*, the court noted that once the Texas Comptroller determined that certain sales that were previously thought to be exempt were subject to the sales tax, and "[t]he later payment of the tax by West Texas pursuant to the Texas Comptroller's determination of liability was an automatic addition of the tax to the sale price and activated West Texas' [the seller] rights against Highway Contractors [the buyer] under article 20.021(A)."[14] The court's holding with respect to a retailer's statute of limitations to recover unpaid sales taxes is ample support for the proposition that the state can sue the retailer to recover uncollected and unpaid sales taxes.

The court agrees that the state court cases cited in the Dismissal Order are not on all fours with the facts of this case, but those cases' legal observations that sales taxes can be collected from either the retailer or the purchaser are on point here. The Debtors' attempt to distinguish those cases on their facts, as though only "all fours" cases count is simply not well taken.[15]

---

[14] Similar to the current § 151.052, article 20.021(A) says: "(A) Every retailer shall add the sales tax imposed by Article 20.02 of this Chapter to his sale price and when added the tax shall constitute a part of the price, shall be a debt of the purchaser to the retailer until paid, and shall be recoverable at law in the same manner as the purchase price…"

[15] The court finds additional support for its holding in *Williams v. Huff*, 52 S.W.3d 171, 179-180 (Tex. 2001). In *Williams*, the Texas Supreme Court was discussing whether a plaintiff that paid sales tax had taxpayer standing in the lawsuit before it and said the following:

> Other jurisdictions, however, have held that merely paying sales tax does not confer taxpayer standing. *See Cornelius v. Los Angeles County Metro. Transp. Auth.*, 49 Cal. App. 4th 1761, 57 Cal. Rptr. 2d 618, 627-29 (Cal. Ct. App. 1996) (payment of gasoline, sales, and state income taxes is insufficient to confer taxpayer standing); *Torres v. City of Yorba Linda*, 13 Cal. App. 4th 1035, 17 Cal. Rptr. 2d 400, 406-07 (Cal. Ct. App. 1993) (payment of sales tax is insufficient for standing); *Collins v. State*, 2000 ME 85, 750 A.2d 1257, 1261 (Me. 2000) (payment of sales tax alone cannot confer standing); *Stumes v. Bloomberg*, 1996 SD 93, 551 N.W.2d 590, 593-94 (S.D. 1996) (absent ownership of property, paying sales tax did not make an inmate a taxpayer). In reaching this conclusion, these courts have determined, under their applicable state statutes, that a

## C. Conclusion

For the reasons stated, the court has granted the Debtors' Motion to Reconsider in part, confined to analyzing whether the Category 2 Taxes, which the Debtors failed to collect from their customers, are dischargeable in bankruptcy. Upon reconsideration, however, the court concludes that its original holding with regard to the dischargeability of Category 2 Taxes was correct, for the reasons articulated in this decision. Ultimately, the court finds that the Debtors, as retailers, can be held liable by the state of Texas for the Category 2 Taxes. Consequently, the Category 2 Taxes are nondischargeable pursuant to §§ 523(a)(1) and 507(a)(8).

Because the question regarding Category 2 Taxes was the only outstanding issue remaining unresolved, and because the court has now concluded that its original conclusion with regard to Category 2 Taxes was correct, the Order Granting the Comptroller's Motion to Dismiss is, by this order, ratified and confirmed, and the Complaint is dismissed.

# # #

---

sales tax is imposed on the seller of goods, not on the purchaser. Thus they reason that although a retailer may pass the sales-tax cost on to the purchaser, paying sales tax cannot make a purchaser a taxpayer for purposes of standing. *See Cornelius*, 57 Cal. Rptr. 2d at 628; *Torres*, 17 Cal. Rptr. 2d at 407; *Collins*, 750 A.2d at 1261; *Stumes*, 551 N.W.2d at 593.

Texas law characterizes our state sales tax differently. Texas courts recognize that although sellers have the legal duty to collect sales tax from purchasers, see TEX. TAX CODE § 151.052, because it is a transaction tax, see TEX. TAX CODE § 151.051 (tax imposed on 'each sale' of a taxable item), both sellers and purchasers are liable to the state for sales tax. *See Serna v. H.E. Butt Grocery Co.*, 21 S.W.3d 330, 333-34 (Tex. App. - San Antonio 1999, no pet.); *Rylander v. Associated Technics Co.*, 987 S.W.2d 947, 948 n.6 (Tex. App. - Austin 1999, no pet.); *Davis v. State*, 904 S.W.2d 946, 952 (Tex. App. - Austin 1995, no writ); *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835, 838 (Tex. App. - Austin 1990, writ denied); *Bullock v. Delta Indus. Constr. Co.*, 668 S.W.2d 502, 504 (Tex. App. - Austin 1984, no writ). Therefore, in Texas, unlike the other jurisdictions discussed above, both sellers and purchasers are considered taxpayers. *See Davis*, 904 S.W.2d at 952. Despite this distinction, we are not persuaded that paying sales tax should be grounds for conferring taxpayer standing.

*Id.* Although the facts of the *Williams* truly have no bearing on the issue before the court today, the Texas Supreme Court's recognition that the Texas Tax Code – as opposed to other states' tax codes – specifically treats both the retailer and the purchaser as being liable for the sales tax is instructive for our purposes here. The court will again note that despite the Debtors efforts to distinguish all of the cases cited in the Dismissal Order for support, the Debtors have not provided <u>any</u> case authority for their position. Nor could this court find any.